SOUTHDOWN, INC., Appellant,

v.

JACKSON TOWNSHIP ZONING
HEARING BOARD.

Commonwealth Court of Pennsylvania.

Argued April 9, 2002.

Decided Oct. 29, 2002.

1060

Paul W. Minnich, York, for appellant.

Steven M. Hovis, York, for appellee.

BEFORE: COLINS, President Judge,[1] and PELLEGRINI, Judge (P), and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Southdown, Inc. (Southdown), appeals from an Order of the Court of Common Pleas of York County (trial court), affirming the Jackson Township Zoning Hearing Board's (Board) denial of a special exception to allow Southdown to do underground limestone mining in areas restricted to residential and agricultural use. We affirm.

Southdown owns and operates a limestone quarrying business that began in 1907.[2] In 1957 Southdown closed the surface quarry and began to extract limestone by an underground operation, which is now the exclusive means used by Southdown for removing limestone from its property. The mining, both surface and underground, has been conducted on land in Jackson Township identified on the township's tax records as "Parcel 77."

On October 31, 1986, Southdown entered into an option agreement with the owners of a 115–acre farm adjacent to Parcel 77. For $1.00 Southdown acquired the right to conduct test drillings on the property and the option to convert the agreement into a mineral rights agreement, in the event the testing confirmed the feasibility of removing limestone therefrom. Southdown did these test drillings at a cost of approximately $100,000. On October 31, 1995, Southdown purchased, in fee simple, 107 acres of the land that had been subject to the option agreement. Also in 1995, Southdown acquired a smaller parcel of land that is adjacent to Parcel 77.

The 1995 acquisitions increased Southdown's landholdings in Jackson Township to 455.90 acres that are divided into three separate, but adjacent, parcels. The largest, Parcel 77, is the site of the original open quarry, the mine portals to the underground shafts and the buildings and equipment used in the limestone mining operations. Parcel 13 is the 107–acre adjacent farm. Parcel 15, the smallest of the three parcels, is the other 1995 acquisition

---

1. This case was originally argued before a panel consisting of Judge Pellegrini, Judge Leavitt and Senior Judge Doyle. As a result of Senior Judge Doyle's retirement from the Court, the case was submitted to President Judge Colins as a member of the panel.

2. Southdown asserts that the 1907 quarry was done by its corporate predecessor. Southdown is a corporation created by merger with Medusa Corporation in 1998. Reproduced Record 19a (R.R. ___). It is not clear if it is Medusa (or its subsidiary or affiliate) that opened the limestone quarry in 1907 or if Medusa acquired the business by asset or stock purchase sometime after 1907. It does not matter. For purposes of this opinion, we assume that it is Southdown, albeit under a different name or ownership, that has consistently owned and operated the business on the land in question in this appeal.

made by Southdown. Each parcel is separately deeded.

The Jackson Township Zoning Ordinance (Ordinance) was first adopted in 1966 and subsequently amended or re-enacted in 1977, 1996, 1998 and 1999. Southdown's three parcels have retained the same zoning district designation since at least 1977.[3] Parcel 77 is zoned industrial except for one small corner, which is zoned residential. Parcel 13 is zoned residential except for a small wedge that is zoned industrial. The landmark that divides the industrial zone from the residential zone in both parcels is a railroad line that bisects Parcel 77 and 13. Parcel 15 is zoned agricultural. Under the current Ordinance, the natural extraction of minerals is allowed by special exception in areas zoned industrial; this was true also under the 1977 version of the Ordinance. It is not permitted in agricultural or residential zones.

On November 30, 1999, Southdown filed an application with the Board to request the grant of a special exception to allow it to extend its underground mining activities to all parts of all three parcels. Specifically, it sought to expand its underground mineral extraction on Parcel 77 from the area zoned industrial to the area zoned residential. It also sought authorization to mine all of Parcel 13, which, as noted, is mostly residential but includes a small industrial sector. Southdown also sought authorization to mine Parcel 15, all of which is zoned agricultural. Southdown proposed to do its limestone extraction by using the existing portals and facilities on

Parcel 77 and without disturbing the surface of either Parcel 13 or 15. In addition, Southdown's proposal would not further disturb the surface of Parcel 77. Southdown claimed the right to the special exception as an expansion of a pre-existing non-conforming use.

■ After a hearing, the Board granted Southdown's request to expand its underground mining activity into the area of Parcel 77 that is zoned residential. The Board found that Southdown had expanded its underground mining into the residential part of Parcel 77 prior to submitting its application for special exception; however, it could not be determined whether this occurred before or after the 1977 zoning district designation. The Board also granted Southdown's request to mine that portion of Parcel 13 that is zoned industrial. It denied Southdown a special exception to conduct underground mining either of Parcel 15 or of the residential portion of Parcel 13. Southdown appealed the Board's decision, and the trial court affirmed. Southdown then appealed to this Court.[4]

On appeal, Southdown argues that the trial court erred in not granting it a special exception to mine all three parcels because its proposed use is authorized by the terms of Ordinance. Alternatively, Southdown argues that the Ordinance does not restrict underground mining since zoning only directs how a landowner may use the surface of his land and not underground uses. However, to the extent the Ordinance purports to regulate underground mining, Southdown contends that it is pre-

---

**3.** A small area of Parcel 15 was affected by a zoning map change in 1986, but that occurred prior to Southdown's interest in Parcel 15. R.R. 25a and 84a.

**4.** Our scope of review of zoning matters is limited to determining whether the Zoning Board has committed an error of law or man-

ifestly abused its discretion, when the trial court, as in this case, has not taken any additional evidence. *Diversified Health Associated Inc. v. Zoning Hearing Board of the Borough of Norristown,* 781 A.2d 244 (Pa.Cmwlth. 2001).

empted by the state law that regulates mining of non-coal minerals, such as limestone. Finally, Southdown argues that the Ordinance, as construed and applied by the Board, is confiscatory of Southdown's property rights.

■ A special exception is not an exception to a zoning restriction, but, rather, a use that is expressly permitted, so long as the applicant can show the absence of a detrimental effect on the community. *Greaton Properties v. Lower Merion Township*, 796 A.2d 1038 (Pa.Cmwlth. 2002). An applicant for a special exception has the burden of going forward with the evidence and of persuasion in a hearing before the zoning hearing board. The applicant must prove that the proposed use satisfies the objective requirements of a special exception. *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991).

■ Here, the Ordinance permits natural extraction industries in the industrial zoning district by special exception. Southdown presented evidence that the surface of Parcel 13 would not be disturbed; waste piles would not be placed on Parcel 13; and surface reclamation of Parcel 13 would not be required. Thus, the

Board concluded that Southdown's mining of that area of Parcel 13 zoned industrial would "not disrupt the orderly and appropriate development of the zoning district" and granted the special exception. R.R. 85a.

The Board made similar factual findings with respect to the residential portion of Parcel 77 and granted a special exception for Southdown's mining there. However, the real basis for the Board's decision was that underground mining was already taking place there, and it could not be determined whether that activity began before, or after, adoption of the 1977 version of the Ordinance. In actuality, therefore, it appears that because Southdown established a prior non-conforming use of Parcel 77, the Board granted the application. Nonetheless, requisite to a special exception, the Board made the factual findings that there would not be a detrimental effect on the community.[5] The Board's grant to Southdown of the right to mine all of Parcel 77 is well-founded.

■ The extraction of natural minerals is not a permitted use in areas zoned agricultural or residential. R.R. 26a. It is not permitted by right, and it is not permitted by special exception.[6] Mining is

---

**5.** The record showed that there will be no change to the surface of the residential portion of Parcel 77, no increase in traffic in the residential district and no impairment of any adjacent buildings. R.R. 52a–53a.

**6.** The terms "special exception" and "variance" are not synonymous. *Lukens v. Zoning Board of Adjustment of Ridley Township*, 367 Pa. 608, 80 A.2d 765 (1951). The authority to grant both forms of relief is lodged in the zoning hearing board, but different standards and analysis are applied to each. As noted, a special exception use is a permitted use, so long as the property owner satisfies the zoning hearing board that it will meet the conditions of the zoning ordinance. *Township of Haverford v. Spica*, 16 Pa.Cmwlth. 326, 328

A.2d 878 (1974). On the other hand, a variance admits that the use of the land in question violates the ordinance, but acknowledges that some special unique hardship will be imposed on the subject property by strict application of the zoning restrictions. *Id.*

To obtain a variance, a property owner must prove (1) that an unnecessary hardship unique to the property exists and (2) that the variance, if granted, would not be contrary to the public health, safety, welfare or morals. *Id.* Unnecessary hardship can be established where that the physical features of the property are such that the property cannot be used for a permitted use or where the property cannot be conformed for a permitted use only at a prohibitive cost. Unnecessary hardship

prohibited in agricultural and residential zones, and the Board concluded that it simply lacked the power to grant a special exception to allow such a use of Parcel 15, which is zoned agricultural, or of that part of Parcel 13 zoned residential. Accordingly, the Board properly denied Southdown's request for a special exception to mine those areas of its land where mining is not a use permitted by special exception.

■ Southdown next argues that it established the right to mine all of Parcel 13 and 15 under the theory of a prior nonconforming use. To that end, Southdown notes that its mining of Parcel 77 has extended to the boundary lines with Parcels 13 and 15, which have been "used," accordingly, to buffer the mineral extraction taking place on Parcel 77. A buffer to mineral extraction is required by the Ordinance, which, Southdown contends, makes the buffer integral to a mining activity. Thus, Southdown argues that Parcels 13 and 15 have been "used" in mining for years. Alternatively, Southdown argues that all three parcels, which are under common ownership, should be treated as one,[7] and that one is Parcel 77, the site of

limestone mining since 1907. The Board rejected both theories.

Southdown's "use" argument lacks merit. First, the setback and buffer was to be provided by land on Parcel 77. Southdown violated the Ordinance buffer requirements by mining up to the line of Parcel 77; Parcels 13 and 15 cannot provide the necessary buffer to activities taking place on another lot. Second, the test drilling that took place on Lot 13 does not establish a pre-existing non-conforming use. The 1977 Ordinance long pre-dated both Southdown's test drilling (in 1986) and its acquisition of Parcels 13 and 15 (in 1995).[8] Southdown knew, or should have known, that mining was not a permitted use, except in one small area of Parcel 13, at the time it did the testing and the subsequent acquisition. In any case, a survey or drilling done in anticipation of mineral extraction does not establish a mineral extraction use. Southdown offers sophistry, not substance, in its non-conforming use argument, and it was correctly rejected by the Board.[9]

■ The Board also correctly analyzed Southdown's argument that its 455.90 acres of land should be considered one lot,

may also be established by evidence that the property has no value for any use permitted by the zoning ordinance. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997). Here, Southdown did not request a variance from the Board, and it did not offer that evidence that would be required to establish a right to a variance. Accordingly, the issue of whether or not the Board should have granted Southdown a variance to enable it to undertake its proposed limestone mining activities is not before us.

7. Of course, if the three lots should be treated as one zoning district, the case could be made with equal force that this single "lot" should be placed into a residential or agricultural district.

8. With little conviction, Southdown contends that since the most recent re-enactment of the Ordinance took place in 1996, Southdown's 1995 acquisition is exempt from the 1996 Ordinance. The 1996 Ordinance, however, did not alter the zoning districts in place for Parcels 13 and 15, at the time they were acquired by Southdown.

9. Indeed, the Board noted that Southdown's position, if correct, would do violence to a zoning scheme. We agree. Under Southdown's theory, a landowner could avoid a dimensional requirement simply by buying adjacent property. For example, a warehouse, in a commercial district, could be built right up to the property line if the landowner also owned immediately adjacent houses in a residential district which were then "used" as "setback" for the warehouse.

not three. Section 636(A) of the Ordinance limits the expansion of an existing nonconforming use to the "lot on which it is located." JACKSON TOWNSHIP, YORK COUNTY, ZONING ORDINANCE § 636(A) (1999). Section 203 of the Ordinance defines a lot as "[a] designated *parcel,* tract, or area of land established by a plat or otherwise as permitted by law and to be used, developed or built upon as a *unit .*" JACKSON TOWNSHIP, YORK COUNTY, ZONING ORDINANCE § 203 (1999) (emphasis added). The record shows that Southdown holds title to its three parcels under three separate deeds; each parcel is described by a separate metes and bounds description; each was acquired in a separate conveyance; and each parcel's tax is separately calculated. R.R. 15a. The Board held that unless separately deeded lots have been joined by a deed of reconveyance that makes the constituent parcels inseparable in the future or there has been a formal consolidation by the filing of a recorded plan, the deed establishes a "lot" for the purposes of the Ordinance. We agree. Parcel 77 is the only parcel that can claim a non-conforming use, and that use does not cross parcel—or lot—lines by virtue of common ownership.

 Southdown next argues that the activity of underground mining is beyond the reach of the Ordinance. We disagree. Municipalities have broad authority to regulate land use in general and mineral extraction in particular. The Municipalities Planning Code provides in relevant part as follows:

a) Zoning ordinances should reflect the policy goals of the statement of community development objectives required in section 606, and give consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality.

b) *Zoning ordinances, except to the extent that those regulations of mineral extraction by local ordinances and enactments have heretofore been superseded* and preempted by the act of May 31, 1945 (P.L. 1198, No. 418), known as the "Surface Mining Conservation and Reclamation Act," [10] the act of December 19, 1984 (P.L. 1093, No. 219), known as the "Noncoal Surface Mining Conservation and Reclamation Act," [11] ... may permit, prohibit, regulate, restrict and determine:

(1) Uses of land, watercourses and other bodies of water.

\* \* \*

(5) Protection and preservation of natural and historic resources and prime agricultural land and activities.

Section 603 of the Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10603 (emphasis added). Thus, municipalities may regulate mineral extraction, except where pre-exempted by the specific statutes referenced in Section 603.[12] Southdown argues that the Ordinance did not intend to regulate underground mining but if it did, it was preempted by Noncoal Surface Mining Conservation and Reclamation Act (Noncoal Surface Mining Act).

 The permissive widest use of the land is the rule and not the exception,

---

10. 52 P.S. §§ 1396.1–1396.19a. The Surface Mining Conservation and Reclamation Act regulates extraction of coal.

11. 52 P.S. §§ 3301–3326.

12. Other statutes referenced in Section 603 of the Municipalities Planning Code have no application to Southdown, such as the Oil Gas Act, The Bituminous Mine Subsidence and Land Conservation Act, The Nutrient Management Act, and the Agricultural Area Security Law.

unless a use is specifically restrained in a valid and reasonable exercise of the police power. *Laird v. City of McKeesport,* 88 Pa.Cmwlth. 147, 489 A.2d 942 (1985). Consistent with this principle we are asked to determine whether the Ordinance regulates underground mining. The Ordinance states in relevant part as follows:

### SECTION 635. NATURAL EXTRACTION INDUSTRIES.[13]

In the I Zone and subject to the requirements of that zone except as herein modified and provided:

A) Where deemed necessary by the Zoning Hearing Board, an open *excavation* shall be enclosed by a fence or wall that completely encloses the portion of the property in which the *excavation* is located; said fence or wall shall be not less than four (4) feet in height and shall be so constructed as to have openings no larger than six (6) inches, and if pickets are used, the openings shall not exceed six (6) inches.

* * *

C) In the case of an open excavation, a slope no greater than twenty percent (20%) shall extend from property or street lines to the edge of the excavation.

JACKSON TOWNSHIP, YORK COUNTY, ZONING ORDINANCE § 636 (1999). "Excavation" is not defined in the Ordinance, but it has been defined in the Webster's II New Collegiate Dictionary (1995) as "forming a cavity or hole in—to form by hollowing—to dig out and remove. . . ." In short, "excavation" is a term broad enough in scope to cover extraction by underground as well as surface operations. We find that the Ordinance was intended to address the underground excavation of limestone.

■ Southdown argues that to the extent the Ordinance does address underground mining, it has been preempted by the Noncoal Surface Mining Act, 52 P.S. §§ 3301–3326.[14] The intent of this statute is clear: to address surface mining;[15] in-

---

**13.** "Natural Extraction Industries" is defined in the Ordinance as "excavation, for the purpose of removal and sale of . . . limestone, or other natural resources." JACKSON TOWNSHIP, York County, § 203 (1999). This definition does not limit excavation to surface as opposed to underground excavation.

**14.** As noted in foot note 7, *supra,* the other statutes referenced in Section 603 of the Municipalities Planning Code, 53 P.S. § 10603, have no possible application to Southdown's operations because they relate to oil, gas, coal or farming. Thus, the only statute that Southdown can pick for its preemption agreement is the Noncoal Surface Mining Act.

We are cognizant that there are some areas of the law where municipal regulations may not intrude because the Commonwealth has preempted the field. *City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980). Southdown attempts to make an argument that there is a comprehensive statutory regulatory scheme that precludes a municipality from regulating either quarrying

or mining of minerals other than coal. Our review of the areas of law referenced by Southdown indicates that both quarrying and subsurface mining are subject to the regulatory control of such Commonwealth enactments as the Clean Streams Law, Section 315 of the Act of June 22, 1937, P.L.1987, art. III, as amended, 35 P.S. 691.315(a), the Air Pollution Control Act, Section 1 of the Act of Jan. 8, 1960, P.L. 2119, as amended, 35 P.S. §§ 4001–4106 and the Solid Waste Management Act, Section 101 of the Act of July 7, 1980, P.L. 380, as amended, 35 P.S. §§ 6018.101, but we fail to find either express preemption in any referenced enactment or the comprehensive regulatory scheme that suggests preemption of the regulation of underground extraction of limestone by the Commonwealth.

**15.** Section 2 of the Noncoal Surface Mining Act provides,

This act shall be deemed to be an exercise of the police powers of the Commonwealth for the general welfare of the people of this

deed, its definition of "surface mining" specifically excludes subsurface mining activities.[16] Because the Noncoal Surface Mining Act does not even apply to underground mining, it cannot be construed to preempt a zoning ordinance that regulates underground mining. In any case, the Noncoal Surface Mining Act provides an exception to its preemptive effect for local ordinances promulgated under the authority of the Pennsylvania Municipalities Planning Code.[17] Here, the Ordinance was adopted under authority of the Municipalities Planning Code. There is simply no textual support for Southdown's claim that Jackson Township's regulation of underground mining has been preempted by the Noncoal Surface Mining Act.

 Southdown's final claim is that the Board's interpretation and application of the Ordinance has resulted in a regulatory taking because it conclusively prevents Southdown from gaining access to its subsurface mineral property. Pennsylvania's appellate courts consistently turn to federal precedent for guidance in a taking claim. *Machipongo Land and Coal Company, v. the Department of Environmental Protection*, 569 Pa. 3, 799 A.2d 751 (2002). We do so here.

 The U.S. Supreme Court has held that a matter must be "ripe" before a claim of a taking may be asserted. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court held that a takings claim challenging the application of land-use regulations is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108. Whether a regulation has deprived a landowner of "all economically beneficial of productive use"[18] or has defeated the reasonable investment backed expectations of the land-

---

Commonwealth, to provide for the conservation and improvement of areas of land affected in the *surface mining* of noncoal minerals, to aid in the protection of birds and wildlife, to enhance the value of the land for taxation, to decrease soil erosion, to aid in the prevention of the pollution of rivers and streams, to protect and maintain water supply, to protect land, to enhance land use management and planning, to prevent and eliminate hazards to health and safety and generally to improve the use and enjoyment of the lands.
52 P.S. § 3302 (emphasis added).

**16.** Section 3 of the Noncoal Surface Mining Act, defines "surface mining" as follows:

The extraction of minerals from the earth, from waste or stockpiles or from pits or from banks by removing the strata or material that overlies or is above or between them or otherwise exposing and retrieving them from the surface, including, but not limited to, strip mining, auger mining, dredging, quarrying and leaching and all surface activity connected with surface or underground mining, including, but not limited to, exploration, site preparation, entry, tunnel, drift, slope, shaft and borehole drilling and construction and activities related thereto; *but it does not include those mining operations carried out beneath the surface by means of shafts, tunnels or other underground mine openings.*
52 P.S. § 3303 (emphasis added).

**17.** Section 16 of the Noncoal Surface Mining Act provides,

*Except with respect to ordinances adopted pursuant to* the act of July 31, 1968 (P.L. 805, No. 247), known as *the Pennsylvania Municipalities Planning Code,* all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth, by this enactment, hereby preempts the regulation of surface mining as herein defined.
52 P.S. § 3316 (emphasis added).

**18.** *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

owner cannot be determined until the state agency responsible for the regulation has made a final decision. *See Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). To decide a takings claim, the court must know the "extent of permitted development" on the land in question. *McDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986). This Court has also held that so long as there are administrative processes available to a landowner hold the possibility for an accommodation, the constitutional issue should be deferred. *Machipongo Land and Coal Company v. the Department of Environmental Resources,* 155 Pa.Cmwlth. 72, 624 A.2d 742 (1993), *reversed on other grounds, Machipongo Land and Coal Co., Inc. v. Com., Dept. of Environmental Resources,* 538 Pa. 361, 648 A.2d 767 (1994).

■ Drawing on these principles, we hold that Southdown's takings claim is not ripe for our consideration. Southdown sought a special exception for activities that were permitted in some areas but proscribed in others, depending on the zoning restrictions for each parcel. When a use is proscribed, such as the extraction of minerals on property zoned agricultural or residential, the party seeking the non-conforming use must request, *inter alia,* a variance or a zoning change. *Township of Haverford v. Spica,* 16 Pa.Cmwlth. 326, 328 A.2d 878 (1974). Southdown did not request for a variance or zoning change. The Board has not issued a final decision denying Southdown all reasonable beneficial use of its property, which is required before we can consider Southdown's takings claim. *Machipongo Land and Coal Company,* 569 Pa. 3, 799 A.2d 751 (2002).

For these reasons, we affirm the decision of the trial court.

## ORDER

AND NOW, this 29th day of October, 2002, the order of the Court of Common Pleas of York County issued on June 27, 2001 in the above-captioned case is hereby affirmed.