Elsie R. BROUSSARD, M.D.

v.

ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH, and The Twentieth Century Club, City of Pittsburgh, Medcano Corporation, Schenley Farms Civic Association, Gregory Snow, Patricia M. Moore, Jack L. Paradise, Mary Paradise, H. Richard Howland, Veronica Wojnaroski, Andrew McSwigan, Melissa McSwigan, Carol Kowall, and Mary A. McDonough.

Appeal of Schenley Farms Civic Association, Gregory Snow, Patricia M. Moore, Jack L. Paradise, Mary Paradise, H. Richard Howland, Veronica Wojnaroski, Andrew McSwigan, Melissa McSwigan, Carol Kowall, and Mary A. McDonough.

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2003.

Decided Aug. 13, 2003.

Reargument Denied Oct. 6, 2003.

---

Gregory Snow, Pittsburgh, for appellant.

Andrea Geraghty, Pittsburgh, for appellee, Medcano Corporation.

Edward R. Leckey, Pittsburgh, for appellee, Twentieth Century Club.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

LEAVITT, Judge.

Schenley Farms Civic Association, *et al.,* the Twentieth Century Club and Elsie R. Broussard, M.D., (collectively, Appellants) appeal from a decision of the Court of Common Pleas of Allegheny County (trial court) which affirmed the decision of the City of Pittsburgh Zoning Board of Adjustment (Zoning Board) to grant MedCano Corporation (MedCano) a special exception for its off-site parking plan. We affirm the trial court.

MedCano owns the building (Property) that formerly housed the Historical Society of Western Pennsylvania (Historical Society) at 4338 Bigelow Boulevard, located in the Oakmont Section of Pittsburgh.[1] The Property is a two-story structure, with a full basement; the entrance to the basement is at street level from Bigelow Boulevard. Each floor consists of a large, center open area with small reception areas in the front, and narrow passage ways along the sides.

In anticipation of selling the Property to MedCano, certain changes to the property were proposed by the Historical Society to the Planning Commission.[2] The changes proposed were the creation of: (1) a small parking plaza consisting of three parking spaces, (2) a pick-up and drop-off circular driveway, and (3) a renovation to include meeting spaces on the first floor and medical offices on the remaining floors. The Historic Review Commission reviewed and approved the plan, as did the Planning Commission on May 18, 1999. Thereafter, the Property was sold to MedCano.

On November 14, 2000, MedCano filed an Application for Occupancy/Building Permit to use the Property as a video conference center, banquet hall for weddings and for the showing of musical and theatrical productions. The Zoning Administrator disapproved[3] the Application under Section 914.07.G.2 of the Zoning Code (relating to special exceptions under the Parking Loading and Access Standards of the Zoning Code), and MedCano appealed to the Zoning Board.

At the Zoning Board hearings, MedCano presented a Parking Demand Analysis Study and Parking Management Plan, as well as the testimony of a parking consultant, David R. Freudenich. MedCano further submitted a letter from Plaza Parking Services, Inc., the lessee that operates the Sterling Plaza Garage, confirming that it had sufficient space available during peak hours to park vehicles and that it would make these spaces available to MedCano patrons. MedCano also offered evidence

---

1. The Property is located in an EMI, Educational/Medical Institution Zoning District, the Oakland Civic Center Historic District and the Oakland Interim Planning Overlay District, IPOD–1. It is bounded by property owned by the Twentieth Century Club, a member of the Schenley Farm Civic Association and by Elsie Broussard.

2. This proposal, called an Interim Planning Overlay District (IPOD) Plan, was required by ordinance. It states in pertinent part:

 [E]very new or changed use of land, every building demolition, every new, enlarged or reconstructed advertising sign, every new

or enlarged parking area, and every structure erected or enlarged [in the Oakland IPOD must] ... be in accord with an IPOD Project Development Plan (PDP) ... approved by the Planning Commission.

Section 907.02.F.4 of the Zoning Code of the City of Pittsburgh (Zoning Code).

3. Because the Property does not contain sufficient on-site parking for the proposed use, the Zoning Administrator was required to disapprove the Application. Under the Zoning Code, only the Zoning Board can approve alternatives to on-site parking.

that it would provide valet service to its patrons parking at the Sterling Plaza Garage. The Historical Society's IPOD Project Development Plan was also admitted.

On October 5, 2001, the Zoning Board issued a decision finding that " § 914.07.-G.1(a)(1)[4] requires van or shuttle service from spaces over 1,000 feet in distance, and [§ 914.07.G.2(a)(4) ] requires a recordable [off-site] parking agreement. Neither condition has been fully satisfied as of the date hereof." Zoning Board Decision, p. 8 Nevertheless, the Zoning Board granted MedCano a special exception for off-site parking with the following conditions:

> The requested building/occupancy permit should not be issued unless and until:
>
> (a) A written and legally binding van or shuttle service agreement with a third party is submitted to and approved by the Administrator or written evidence of the acquisition of a van by the Appellant is so submitted and approved; and
>
> (b) Section [914.07.G.2(a)(4) ] is fully complied with.

Zoning Board Decision, p. 8. The Zoning Board also determined that the IPOD Plan submitted by the Historical Society was adequate.

Elsie Broussard appealed the Zoning Board's decision to the trial court, the other Appellants intervened. The trial court, without taking any additional evidence, held that "[a]lthough the off-site parking agreement technically does not comply with Section 914.07.G.2(a)(4) of the Zoning Code, the Board addressed these requirements in its Decision by granting the special exception conditioned upon MedCano's compliance with the Zoning Code as to off-site parking spaces." Trial Court Opinion, p. 4. Accordingly, the trial court affirmed the decision of the Zoning Board by order dated May 17, 2002. This appeal followed.

■ On appeal,[5] Appellants raise three issues. They assert that: (1) the Zoning Board erred by not requiring Med-Cano to submit a written and binding parking agreement with its Application; (2) the Zoning Board erred by granting a special exception when MedCano failed to obtain a new IPOD Project Development Plan for the Property; (3) the Zoning Board erred by failing to make necessary findings of fact; and (4) the Zoning Board placed the burden of proof on the wrong party. Accordingly, they contend that the Zoning Board's grant of a special exception to MedCano should be reversed.

4. The Sections of the Zoning Code cited by the Zoning Board deal with shared parking agreements, which allow "users to share off-street parking facilities for multiple use developments or for uses that are located near one another and that have different peak parking demands or different operating hours." Section 914.07.G.1 of the Zoning Code. MedCano never applied for shared parking, and this was never an issue in this case. The Zoning Board must have referred to these Sections by mistake and meant to refer to Section 914.07.G.2(a), subsections (1) and (4), both of which deal with off-site parking agreements, which was at issue before the Zoning Board. Any further quotes of the Zoning Board decision in this opinion will have the incorrect

Section references deleted and replaced by the correct Section reference in brackets.

5. When the trial court does not take any additional evidence, our scope of review is limited to determining whether the zoning board abused its discretion or committed an error of law. *Southdown, Inc. v. Jackson Township Zoning Hearing Board,* 809 A.2d 1059 (Pa. Cmwlth.2002). A zoning hearing board abuses its discretion only if its findings are not supported by "substantial evidence," that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mehring v. Zoning Hearing Board of Manchester Township,* 762 A.2d 1137 (Pa. Cmwlth.2000).

A special exception is not an exception to a zoning restriction, but a use that is expressly permitted. *Southdown, Inc. v. Jackson Township Zoning Hearing Board,* 809 A.2d 1059, 1063 n. 6 (Pa. Cmwlth.2002).

> "An 'exception' in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist." Thus, an exception has its origin in the zoning ordinance itself. It relates only to such situations as are expressly provided for and enunciated by the terms of the ordinance. *The rules that determine the grant or refusal of the exception are enumerated in the ordinance itself.* The function of the board when an application for an exception is made is to determine that such specific facts, circumstances and conditions exist which comply with the standards of the ordinance and merit the granting of the exception.

*Kotzin v. Plymouth Township Zoning Board of Adjustment,* 395 Pa. 125, 127–128, 149 A.2d 116, 117–118 (1959) (quoting *Application of Devereux Foundation,* 351 Pa. 478, 483, 41 A.2d 744, 746 (1945)) (emphasis added). Here, the Zoning Code expressly authorizes off-site parking as a special exception. It states in relevant part as follows:

(a) Off–Site Parking

The Zoning Board of Adjustment shall be authorized, in accordance with the Special Exception provisions of Sec. 922.07, to permit all or a portion of the required off-street parking spaces to be located on a remote and separate lot from the lot on which the primary use is located, subject to the following standards.

(1) Location

No off-site parking space shall be located more than 1,000 feet from the primary entrance of the use served, measured along the shortest legal, practical walking route. This distance limitation may be waived by the Zoning Board of Adjustment if *adequate assurances* are offered that van or shuttle service will be operated between the shared lot and the primary use.

. . .

(4) Off–Site Parking Agreement

In the event that an off-site parking area is not under the same ownership as the primary use served, a *written agreement* among the owners of record *shall be required.* An attested copy of the agreement between the owners of record shall be submitted to [the] County Recorder's Office for recordation on forms made available in the office of the Zoning Administrator. *Proof of recordation of the agreement shall be presented to the Zoning Administrator prior to issuance of a building permit.* An off-site parking agreement may be revoked by the parties to the agreement only if off-street parking is provided on-site pursuant to Sec. 914.02.A or if an Alternative Access and Parking Plan is approved by the Zoning Board of Adjustment pursuant to Sec. 914.07.

Section 914.07.G.2(a)(1) and (4) of the Zoning Code (emphasis added).

Appellants argue, first, that MedCano was required to submit the off-site parking contract with its Application. They contend that the Zoning Board's decision is contrary to numerous holdings of this Court[6] that compliance with the specific

---

**6.** *See Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988); *Lafayette College v. Zon-*

requirements for a special exception must be demonstrated at the time the application is before the zoning board. These cases are inapposite.

Section 914.07.G.2(a)(4) of the Zoning Code established a two-step process for approval of an off-site parking agreement. First, "a *written agreement* among the owners of record *shall be required.*" *Id.* (emphasis added). The ordinance does not specify the form of the "written agreement," and it does not specify when it "shall be required" in the special exception application process. Second, "[p]roof of recordation of the agreement shall be presented to the Zoning Administrator *prior to issuance of a building permit.*" *Id.* (emphasis added).

In this case, MedCano submitted to the Zoning Board a letter evidencing the agreement of Plaza Parking Services, Inc., managing agent/lessee of the Sterling Plaza Parking Garage located at the corner of Craig and Bayard, to make 60 or more parking spaces available during daytime, evening and weekend hours.[7] Reproduced Record 145a, 53a (R.R. ——). This letter agreement was found satisfactory by the Zoning Board for purposes of the special exception application. Indeed, this letter agreement contains the information relevant to the Zoning Board's inquiry by specifying the number of spaces and the hours of availability. The Principal Transportation Planner for the City of Pittsburgh separately determined that MedCano's parking plan was satisfactory. R.R. 144a. Notably, MedCano cannot act upon its special exception unless and until its letter agreement is rendered a definitive form agreement and filed with the County Recorder's Office. Only then will MedCano be able to obtain a building permit under Section 914.07.G.2(a)(4) of the Zoning Code.

▉ In short, the Zoning Board interprets its ordinance as not requiring the recordable agreement to be included in the application for a special exception; rather, it must be submitted and filed at the building permit stage of the project. This is a logical interpretation that is consistent with the actual language of Section 914.07.-G.2(a)(4) of the Zoning Code. Further, it is this Court's practice to defer to a zoning board's interpretation of the zoning ordinance it is charged to enforce. *In re Brickstone Realty Corp.*, 789 A.2d 333, 339 (Pa.Cmwlth.2001). Therefore, the absence of a recordable document at the hearing before the Zoning Board did not bar the grant of the special exception in light of the written agreement that was presented.

---

*ing Hearing Board of City of Easton,* 138 Pa. Cmwlth. 579, 588 A.2d 1323 (1991); *Edgmont Township v. Springton Lake Montesorri School, Inc.*, 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993).

7. The letter of June 12, 2001 from Plaza Parking Services, Inc. to MedCano states:

Dear Dr. Cano:

As I have explained, Plaza Parking Services is the lessee of garage facilities located at the corner of Craig and Bayard Streets in Oakland at the Sterling Plaza.

This letter is to confirm that Sterling Plaza Garage has sufficient space available at all times, including during peak hours (Monday through Friday between 8 a.m. and 5 p.m.) to park an additional 60 vehicles, and will make this space available for patrons of the Historical Society Building located at 4338 Bigelow Boulevard.

Should you have any questions or wish to discuss this matter, please feel free to call. I look forward to working with you in connection with this matter.

Very truly yours,

Charles Cickavage

President, Plaza Parking Services

If needed Plaza Parking Services, Inc. can provide additional parking on weekends and during off peak hours.

R.R. 145a.

Next, Appellants argue that the Zoning Board erred by granting a special exception because MedCano did not obtain approval of a revised IPOD Project Development Plan for the Property and, therefore, the Zoning Board lacked jurisdiction. Specifically, they argue that the uses of the premises set forth in the IPOD presented by the Historical Society and described at the hearing before the Planning Commission are so significantly different from the uses proposed by MedCano as to require a new IPOD Plan.

Section 907.02.F.4 of the Zoning Code provides in relevant part,

> In the Oakland IPOD, within the time period specified above, every new or changed use of land, every building demolition, every new, enlarged or reconstructed advertising sign, every new or enlarged parking area, and every structure erected or enlarged ... shall ... be in accord with an IPOD Project Development Plan (PDP) of Sec. 922.13 approved by the Planning Commission.

The IPOD Plan submitted by the Historical Society, in addition to the parking plaza and related renovations, identified an intent to renovate "the existing building to include meeting spaces on the first floor and medical offices on the remaining floors." R.R. 147a. MedCano proposed to use the Property for "Public Assembly to Include[ ] Video Conference Center, Banquet Facilities [f]or Weddings, Musical [a]nd Theatre Productions." R.R. 158a.

The Zoning Board held that the use put before the Historic Review Commission and the Planning Commission by the Historical Society was a place of public assembly.[8] It reasoned that Section 907.02.F.4 "speaks [to] changes [to the] use of *land* ... not of incidental changes of already legal uses of portions of a building," acknowledging the Zoning Code's distinction between the terms *land* and *building*. Zoning Board Opinion, p. 6 (emphasis in original). Here, MedCano did not intend changes to the land beyond those approved for the Historical Society. Thus, it held that a change from one permitted use to another permitted use does not require the submission of a new IPOD Plan. We agree. Accordingly, we hold that the Zoning Board had jurisdiction to entertain Med-Cano's appeal.[9]

Next, Appellants argue that the Zoning Board erred by failing to consider the detrimental transportation impacts as required for grant of a special exception. They argue that MedCano's testimony on the availability of van, shuttle or valet services does not satisfy the requirements of Section 914.07.G.2(a)(1)[10] for the waiver

---

8. The record indicates that the classification of the MedCano property was unclear under the Zoning Code; MedCano argued it could have been classified as "Public Assembly Limited," "Educational Classroom" or "Recreational and Entertainment Indoor." They elected to use "Public Assembly Limited" for the parking analysis because it provided sufficient parking to satisfy the largest requirement of any category. R.R. 49a. "Public Assembly" is defined as an "open, partially enclosed or fully enclosed structure used or intended to be used primarily for spectator sports, entertainment events, expositions and other public gatherings. Typical uses include convention and exhibit halls, sports arena and amphitheaters." Section 911.02 of the Zoning Code. "Public Assembly (Limited)" means "a Public Assembly use with a capacity of less than 500 persons." *Id.*

9. The Zoning Board's interpretation of the Zoning Code's requirements on IPOD are consistent with the language of the ordinance. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921.

10. It provides,

> No off-site parking space shall be located more than 1,000 feet from the primary entrance of the use served, measured along

of the distance limitation of 1,000 feet; that MedCano's parking study "contained unsubstantiated assumptions and limited relevant data";[11] and that there was insufficient evidence to show that the proposed use would not have a detrimental effect upon the neighborhood.

Where, as here, the trial court has taken no additional evidence in a zoning appeal, questions of credibility and evidentiary weight are solely within the province of the zoning board as fact-finder. A zoning hearing board is free to accept or reject, in whole or part, the testimony of any witness. *Domeisen v. Zoning Hearing Board, O'Hara Township*, 814 A.2d 851, 858, n. 5 (Pa.Cmwlth.2003). The Zoning Board found that MedCano provided "*adequate assurances* ... that van or shuttle service will be operated between the shared lot and the primary use." To hold otherwise, this Court would be required to reweigh the evidence presented at the hearing on MedCano's Application. This we will not do.

Finally, Appellant's contend that the Zoning Board failed to place the burden of proof on the right party. In support, they direct the Court to *Bray v. Zoning Board of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980).

Once an applicant for a special exception meets its burden of persuading a zoning hearing board that its proposed use satisfies the ordinance's objective criteria, it is presumed that the local legislature has already considered that such use satisfies local concerns for the general health, safety and welfare and that such use comports with the intent of the zoning ordinance.

*Brickstone*, 789 A.2d at 340. The burden then shifts to the objectors to rebut the presumption and persuade the zoning board that the proposed use will have a generally detrimental effect.

Here, the Zoning Code specifically placed the burden on MedCano to show that its proposed use would not have a general detrimental effect. Accordingly, MedCano retained the burden of persuasion. Nevertheless, Appellants had the burden of going forward with the evidence on the general detriment, in this case, traffic congestion in the surrounding neighborhoods, citywide traffic circulation and urban design. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65, 70 (1991).

With regard to the familiar complaint of traffic congestion, this Court has stated that not every anticipated increase in traffic justifies a refusal to grant a special exception. *Bray*, 410 A.2d at 914. Moreover, the evidence of objectors must show a high probability of an adverse impact that will pose a substantial threat to the health and safety of the community. *Id.; Greaton Properties v. Lower Merion Township*, 796 A.2d 1038, 1046 (Pa. Cmwlth.2002). Mere speculation as to possible harm is insufficient. *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1018 (Pa. Cmwlth.2002). Further, a zoning board has discretionary power to determine whether a party has met its burden of proof. *Accelerated Enterprises, Inc. v. The Hazle Township Zoning Hearing*

---

the shortest legal, practical walking route. This distance limitation may be waived by the Zoning Board of Adjustment if *adequate assurances* are offered that van or shuttle service will be operated between the shared lot and the primary use.

Section 914.07G.2(a)(1) of the Zoning Code (emphasis added).

**11.** *See* Schenley Farms Civic Association Brief at 22.

*Board,* 773 A.2d 824, 826 (Pa.Cmwlth. 2001).

Here, the Zoning Board considered MedCano's Parking Demand Analysis Study, which the City's Principal Transportation Planner had found satisfactory, subject to confirmation of the availability of sufficient off-site parking. Finding of Fact No. 17. It also had the letter from Plaza Parking Services, Inc., stating that it had sufficient parking spaces available for MedCano's patrons. In contrast, it found the testimony of Appellants' parking expert non-persuasive on the number of spaces needed for MedCano's proposed uses. It also found the evidence on adverse traffic consequences to be non-persuasive.

 Upon careful review of the evidence, we conclude that the findings of the Zoning Board are supported by substantial evidence. Appellants would have us reweigh the evidence, which we will not do. Further, appellate courts show restraint when reviewing the decision of a zoning board. In *Cohen v. Zoning Board of Adjustment of City of Philadelphia,* 3 Pa. Cmwlth. 50, 276 A.2d 352 (1971), we stated:

> Every court reviewing a decision of a local zoning board should demonstrate modest reluctance in trying to measure and assess the multitude of factors and considerations which combine to effect the final decision of such board. Where no additional testimony was received in judicial proceeding, both the lower court and this court must exercise self-restraint as to substituting our opinions far removed from the particular zoning hearing for the well-considered decision of the local officials.

*Id.* at 355. Here, the well-considered decision of the Zoning Board, upheld by the trial court, does not evidence error in its interpretation and application of the Zon-

ing Code. The special exception was properly granted, and it should not be disturbed on appeal.

Accordingly, the trial court's decision is affirmed.

### *ORDER*

AND NOW, this 13th day of August, 2003 the order of the Court of Common Pleas of Allegheny County docketed at SA 01–01212 and dated May 15, 2002 is hereby affirmed.

DISSENTING OPINION BY Senior Judge FLAHERTY.

Respectfully, I dissent.

Schenley Farms, *et al.,* and Elsie R. Broussard, M.D., (collectively, Appellants) argue that the ZBA erred by allowing MedCano Corporation (MedCano) to comply with the specific requirements of 914.07.G.2 at a later date. In support of their argument, Appellants first direct our attention to Chapter 922 (Development and Review Procedures) of the Zoning Code, Section 922.01.B.1, which provides that:

> Limitations on Action
>
> The body holding the hearing may take any action on the application that is consistent with the notice given, including approving such application, approving the application with conditions, approving in part, denying in part, or denying the application. The reviewing body may impose conditions on the application or allow amendments to the application *if the effect of the conditions or the amendments is to allow a less intensive use or zoning district than proposed on the application or to reduce the impact of the development or to reduce the amount of land area included in the application.* The review[ing] body may not approve a

greater amount of development, a more intensive use or a more intensive zoning district then was indicated in the notice.

Section 922.01.B.1 (emphasis added).

In *Edgmont Township v. Springton Lake Montessori School, Inc.,* 154 Pa. Cmwlth. 76, 622 A.2d 418 (1993), the school filed an application for a Special Exception with the zoning board for the purpose of seeking permission to operate a pre-school in a residential/agricultural district. At the zoning board hearings, the township opposed granting the Special Exception because the plan submitted by the school did not meet specific criteria set forth in the zoning ordinance. The school admitted that its application for a Special Exception did not meet the requirements of the zoning ordinance but promised that it would be in compliance prior to opening the school. The zoning board granted the Special Exception on the condition that the school bring its plan into compliance prior to opening the school. The township appealed to the trial court, which affirmed the decision of the zoning board. On appeal to this Court, we reversed and held that:

> Here, the plan as submitted admittedly did not meet four specific requirements of the ordinance needed to be met to obtain a special exception. The School's promise that it intended to revise the plan to meet these requirements is not evidence but a self-serving declaration. *A self-serving declaration of a future intent to comply is not sufficient to establish compliance with the criteria contained in the ordinance. Baird.* If we were to adopt a rule that to obtain a special exception all that would be required is for an applicant to promise to come into compliance at some future date, it would make Board approval meaningless because once a[n] applicant promises[,] it is entitled to receive the

special exception. Accordingly, because a promise to come into compliance is not evidence to support the Board's grant of the special exception, the order of the trial court is reversed.

*Id.* at 420 (emphasis added).

In support of our decision, we cited *Appeal of Baird,* 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988). In *Baird,* the appellee applied for a Special Exception to establish a commercial dog kennel on its property. The zoning board denied the application because the appellee did not submit any plans or specifications to show that the proposed dog kennel would be in compliance with the zoning ordinance. On appeal, the trial court reversed the zoning board and granted the Special Exception. As a basis for its decision, the trial court stated that, because the lot size was in excess of eleven acres, it was self-evident that the parcel of land was sufficiently large enough to hold whatever building configuration was necessary. On appeal to this Court, we reversed and noted that the proper function of a condition imposed upon a special condition is to reduce the adverse impact of the use allowed under the Special Exception, *not* to allow the applicant to meet his burden. *Id.* at 978.

Another case dealing with parking is also instructive in this matter. *In Lafayette College v. Zoning Hearing Board of City of Easton,* 138 Pa.Cmwlth. 579, 588 A.2d 1323 (1991), the college applied for a Special Exception because it wished to convert a single-family house into "rooming units." The zoning board denied the application, but the trial court, after taking additional evidence, reversed and granted the Special Exception. Although the parking plan did not comply with the yard requirements of the ordinance, the trial court imposed a condition to move one of the parking spaces off-site and to slightly reposition two other off-site parking spaces, which the trial court felt would

rectify this problem. On appeal, we reversed and, citing *Baird*, stated that "[t]he trial court has exceeded its authority by modifying the plan, and has approved a plan not submitted by Lafayette ... the standard to be observed in these cases is whether the plan as submitted complies." *Id.* at 1327.

MedCano argues that it did not need to have a written agreement recorded before the Special Exception was granted because Section 914.07.G.2(a)(4) only mandates that a property owner take this step before a *building permit* is granted. MedCano asserts that this Section of the Zoning Code is written this way so that a property owner is not forced to "cloud the title" of a property by recording a parking agreement before knowing whether or not that parking agreement will in fact be approved by the ZBA.

A close reading of Section 914.07.-G.2(a)(4) reveals that approval of an off-site parking agreement is a two-step process. First, in order for the Special Exception to be granted, "a written agreement among the owners of record *shall be required.*" (emphasis added). Second, "[p]roof of recordation of the agreement shall be presented to the Zoning Administrator prior to issuance of a building permit." Thus, MedCano is correct that the off-site parking agreement does not have to be recorded before the building permit is granted. However, it is clear that before the Special Exception is granted, a written agreement among the owners of record *is* required. The language of the Zoning Code in this regard is mandatory. However, MedCano only submitted a letter that was not signed by the owners of record of the MedCano property. The ZBA recognized this in its decision when it found that the Zoning Code requires "van or shuttle service ... and ... a recordable [off-site] parking agreement. *Neither condition has been fully satisfied as of the date hereof.*" (ZBA Decision, p. 8; emphasis added). In fact, the letter submitted by MedCano is not a binding agreement upon the off-site parking facility and thus there is no legal basis upon which to grant an exception.

Nevertheless, the ZBA granted the Special Exception, with conditions, and these conditions were not to "allow a less intensive use or zoning district than proposed on the application or to reduce the impact of the development or to reduce the amount of land area included in the application." Section 922.01.B.1. Rather, the ZBA granted the Special Exception while imposing the condition that MedCano comply with the Zoning Code at some time in the future, which is a practice that this Court has found to be unacceptable. *See Edgmont, Baird* and *Lafayette College.* Thus, I would hold that the ZBA erred by granting the Special Exception with conditions when MedCano had not submitted "a written [parking] agreement among the owners of record" as required by Section 914.07.G.2 of the Zoning Code.

Accordingly, for the reasons set forth above, I would reverse the order of the trial court.