# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Metro Treatment of Pennsylvania, LP, :
                                 :
               Appellant       :
          v.                    : No. 424 C.D. 2017
                                   : Argued: November 13, 2017
Zoning Hearing Board of the Township :
of Shenango and Township of Shenango :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                        HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                        HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                        **FILED: January 10, 2018**

         This is an appeal filed by Metro Treatment of Pennsylvania, LP (Metro) from an order of the Court of Common Pleas of Lawrence County (trial court), affirming a decision of the Zoning Hearing Board of the Township of Shenango (ZHB). By its decision, the ZHB denied Metro's application for a special exception[1] under Sections 1001.C.1.i. and 1403.13 of the Township of Shenango Lawrence County Zoning Ordinance (Ordinance) to operate a methadone maintenance clinic in the Township C-2 Highway Commercial District (C-2 District).[2] The trial court

---

[1] A special exception in a zoning ordinance is an allowable use where facts and conditions as detailed in the ordinance are found to exist, and as such, the exception has its origin in the zoning ordinance itself and relates only to such situations as are expressly provided for and enunciated by the terms of the ordinance. *Broussard v. Zoning Board of Adjustment of City of Pittsburgh*, 831 A.2d 764, 769 (Pa. Cmwlth. 2003).

[2] Ordinance Section 303(B) states:

determined, *inter alia*, that Metro failed to meet its burden of establishing that the proposed use was of the same general character as "Business and Professional Offices,"[3] as claimed by Metro in its application, and affirmed the ZHB's denial of

> In the C-1, C-2, I-P and M-1 Districts, any use not specifically listed in the Authorized Uses for the Zoning District shall not be permitted in that Zoning District, unless such use is authorized by the [ZHB] as a use by special exception in accordance with the applicable express standards and criteria for "Comparable Uses Not Specifically Listed" specified in 1403.13 of this Ordinance.

(Reproduced Record (R.R.) at 41a.)

Ordinance Section 1403.13(a) states:

> Uses of the same general character as any of the uses authorized as permitted uses by right, conditional uses or uses by special exception in the Zoning District in which the property is located shall be allowed, if the Zoning Hearing Board determines that the impact of the proposed use on the environment and adjacent streets and properties is equal to or less than any use specifically listed in the Zoning District. In making such a determination, the Board shall consider the following characteristics of the proposed use:
> 1. The number of employees;
> 2. The floor area of the building or gross area of the lot devoted to the proposed use;
> 3. The type of products, materials, equipment and/or processes involved in the proposed use;
> 4. The magnitude of walk-in trade; and
> 5. The traffic and environmental impacts and the ability of the proposed use to comply with the Performance Standards of Section 1501 of this Ordinance.

(R.R. at 108a.)

[3] Article II, Section 201 of the Ordinance defines "**Business or Professional Offices** as:

> Any office of recognized professions such as doctors, lawyers, architects, engineers, real estate brokers, insurance agents and others who, through training, are qualified to perform services of a professional nature and other offices used primarily for accounting,

the special exception request. For the reasons that follow, we affirm the order of the trial court.

The ZHB held a hearing on Metro's application on June 23, 2016, at which Metro presented, *inter alia*, the testimony of James Scully, Metro's Director of Security Operations. (ZHB Transcript (H.T.), Reproduced Record (R.R.) at 220a-353a.) Mr. Scully stated that Metro has established 65 methadone maintenance clinics across the United States, and sought to establish such a clinic in Lawrence County to help stop the recent surge in the number of deaths by overdose of opiate painkilling medicines and heroin. (*Id.*, R.R. at 239-240.) He described the proposed layout of the facility and outlined the security plan. (*Id.*, R.R. at 249a-253a.) Dr. James Roberts, Metro's Medical Director, testified that the treatment medications to be administered at the clinic would be methadone and buprenorphine, and that in addition to dispensing these medications, counseling would be provided. (*Id.*, R.R. at 262a-263a, 265a.) Rachel Costello, Ph.D., a licensed professional clinical counselor and Metro's regional operations director for the Midwest, testified that the clinic would be staffed with either two physicians or one physician and a nurse practitioner, five to twelve counselors, one pharmacist, approximately six nurses, a treatment service coordinator, and a program director to serve as administrative supervisor of the staff. (*Id.*, R.R. at 276a-277a.) She stated that the majority of patients were employed and, for that reason, the clinic would open early, at 5:30 a.m. and remain open for counseling services, by appointment, until 2:00 p.m. five days a week, with abbreviated hours on Saturday and Sunday; however, actual dosing

corresponding, research, editing or other administrative functions, but not including banks or other financial institutions.

(R.R. at 16a.)

3

hours of methadone and buprenorphine would be from 5:30 a.m. until 11 a.m. and most of the dosing patients would be at the clinic between 5:30 a.m. and 6:30 a.m. (*Id.*, R.R. at 277a, 292a-293a.) She stated that the maximum number of clinic patients is 477, and the expectation is that approximately 25% of that number, or 125 patients would be at the clinic daily; patients were expected to begin to arrive at 4:30 a.m. to line up and their goal would be to get the patients who are only dosing in and out of the clinic in under five minutes. (*Id.*, R.R. at 280a-281a.)

At the conclusion of the hearing, the ZHB decided to convene at a later date and to make a decision at that time, and at a hearing held on August 4, 2016, the ZHB voted to deny the special exception request. The ZHB subsequently issued its findings of fact, conclusions of law and decision (R.R. at 370a-380a), in which it summarized the testimony of the witnesses, and in its conclusions of law, examined the Ordinance definition of "Clinic,"[4] stating:

> The evidence presented is that the treatment facility is a clinic as defined in the Ordinance. The Ordinance distinguishes between the uses and the definitions of a clinic and a medical office. Using the plain language of the Ordinance, the Board concluded that the intention of the Ordinance was that the impact that a clinic would have to the surrounding area is not consistent with the C-2 district[,] which is why it is not zoned in that area.

---

[4] "**Clinic**" is defined in Article II, Section 201 of the Ordinance as:
> Any establishment, including mobile diagnostic units, where human patients receive medical, dental, chiropractic, psychological and surgical diagnosis, treatment and counseling under the care of a group of licensed medical doctors and dentists and their supporting staff, where said patients are not provided with board or room or kept overnight on the premises.

(R.R. at 17a.)

4

(Conclusions of Law, ¶ 11, R.R. at 379a.) The ZHB further determined that Metro had not met its burden of persuasion that the proposed use satisfies the objective requirements of the Ordinance as set forth in Section 1403.13 with respect to the magnitude of traffic. (*Id*., ¶ 14, R.R. at 380a.) Metro appealed to the trial court, and after a hearing at which it took no additional testimony, the trial court denied Metro's appeal. (Opinion and Order, March 9, 2017.)

On appeal, Metro states, correctly, that a "Business or Professional Office" is a permitted use in the C-2 District and that a "Clinic," while not listed as a use in a C-2 District, is listed as a conditional use in the C-1 Community Commercial District.[5] Metro also asserts, correctly, that the fact that a "Clinic" is permitted in another district does not prevent consideration of the use in the C-2 District as a "Comparable Use Not Specifically Listed," so long as the proposed use is of the same general character as any use authorized in the C-2 District, the impact of the use on environmental and adjacent streets is equal to or less than any use specifically listed in the C-2 District, and the use meets other specific standards and criteria set forth in Section 1403.13 and other applicable sections of the Ordinance. However, Metro further asserts that Metro's proposed use as a methadone treatment clinic is of the same general character as the "Business or Professional Office" use, and thus the ZHB erred in finding that the proposed clinic does not satisfy the objective requirements of the Ordinance.[6] We do not agree.

---

[5] Ordinance Section 901(B).1.b. establishes that in the C-1 Community Commercial District, a "Hospital, Clinic or Nursing Home, subject to Section 1403.19" is a conditional use. (R.R. at 63a.)

[6] Because the trial court took no additional evidence, our review is limited to determining whether the ZHB committed an error of law or an abuse of discretion. *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1144 (Pa. Cmwlth. 2006).

5

Citing *MarkWest Liberty Midstream & Resources, LLC v. Cecil Township Zoning Hearing Board*, 102 A.3d 549, 558 (Pa. Cmwlth. 2014), Metro argues that in order to establish that a proposed use is of the "same general character" as a permitted use, the applicant need not show that it is identical, but only that the proposed use bears a similarity to the authorized use. Metro also argues that all other specific standards and criteria set forth in the Ordinance and related to the use have been satisfied, and that the ZHB erred in imposing upon Metro the burden of persuading the ZHB that the use was "not a hazard to public safety." Because the proposed use is not of the same general character as a "Business or Professional Office," we must affirm the decision of the ZHB and of the trial court, and we need not reach the question of whether Metro has or has not met other specific standards and criteria set forth in Ordinance Section 1403.12.

As the trial court noted, other than the testimony of a civil engineer who stated that the proposed use was a comparable use because "we've looked at other uses identified in the C-2, many of which would have a greater impact to the roadways[,] surrounding properties and environment than this proposed use," Metro failed to present any evidence at all to establish that a "Clinic" is a use of the same general character as a "Business or Professional Office." (H.T., R.R. at 298-299.) Metro failed to establish that the nature of the activities and operation of the proposed clinic, as described in detail by its various witnesses, bear any similarity whatsoever to a "Business or Professional Office" or to any other of the uses authorized in the C-2 district. Instead, Metro focused on the impact of the proposed use on the roadways and environment, which are criteria to be addressed only after the ZHB has determined that a proposed use is of the same general character of an authorized use. Moreover, as evidence that the two uses are not of the same general

6

character, the Ordinance clearly contemplates "Business or Professional Offices" and "Clinics" as separate entities, authorizing professional offices as a permitted, principal use in both the C-1 Community Commercial District and the C-2 District, but authorizing "Hospitals, Clinics and Nursing Homes subject to Section 1403.19," as conditional uses only in the C-1 Community Commercial District and excluding each of those uses as conditional uses in the C-2 District. In addition, while each of the definitions of "Hospital," "Clinic," and "Nursing Home" expressly refers to the care and treatment of human patients, the definition of a "Business or Professional Office" describes the office of a trained professional qualified to perform services of a professional and/or administrative nature and does not contain the word "treatment," "care," or "patient." Where an ordinance is not ambiguous, and where different zoning districts impose different requirements, each section should not be read in isolation. *Appeal of Richboro CD Partners, L.P.*, 89 A.3d 742, 748 (Pa. Cmwlth. 2014). Metro's application for a special exception was properly denied by the ZHB, in accordance with the Ordinance. Accordingly, we affirm the Order of the Trial Court.


**JAMES GARDNER COLINS, Senior Judge**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Metro Treatment of Pennsylvania, LP, :
:
Appellant :
v. : No. 424 C.D. 2017
:
Zoning Hearing Board of the Township :
of Shenango and Township of Shenango :

## **O R D E R**

AND NOW, this 10th day of January, 2018, the Order of the Court of Common Pleas of Lawrence County in the above-captioned matter is AFFIRMED.

**JAMES GARDNER COLINS, Senior Judge**