3 Pa. Commonwealth Ct. 50 (1971)
Cohen
v.
Philadelphia Zoning Board of Adjustment.
Appeal No. 954 Tr. Dkt. 1970.
Commonwealth Court of Pennsylvania.
Argued February 9, 1971.
April 20, 1971.
Argued February 9, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.
*51 Carl K. Zucker, Deputy City Solicitor, with him Matthew W. Bullock, Jr., First Deputy City Solicitor, and Levy Anderson, City Solicitor, for appellant.
Martin M. Krimsky, with him Kremer, Krimsky & Luterman, for appellee.
OPINION BY PRESIDENT JUDGE BOWMAN, April 20, 1971:
This appeal follows a decision of the Court of Common Pleas of Philadelphia County reversing a decision of the Zoning Board of Adjustment. The Board denied an application for a variance to construct side and rear additions to an existing single family dwelling in contravention of the requirements set forth in the Philadelphia Code. Without taking further testimony, the lower court reversed the Board's decision and ordered that the variance be granted.
The premises in question are located in a section of northeastern Philadelphia zoned "R-5" Residential. Under the Philadelphia Code provisions enumerating the permitted uses in an "R-5" district are all the uses permitted in higher residential classifications with the exception that smaller lot size and area requirements are recognized. Also, in addition to use as a single *52 family dwelling, occupants are permitted various accessory uses.
Dr. Jacob H. Cohen, appellee here, has occupied the premises as a single family dwelling and as a medical office for his own practice as permitted under the zoning regulations since 1954. Permitted accessory uses include:
"§ 14-203
. . . .
"(c) Office of doctors of medicine, osteopathy, dentistry, chiropractice or optometry, podiatry, minister or lawyer, provided that such office:
"(1) Shall be situated in the dwelling of such practitioner;
"(2) Shall be incidental to the main purpose of the residence;
"(3) Shall have no more than one assistant regularly employed therein;
"(4) Shall not be used by any colleagues or associciates."
Dr. Cohen used the lower floor of his three-story "row house" for his professional offices and the upper floors for living quarters.
Prior to these proceedings he applied for a variance to construct additions to the front and rear of his house to accommodate larger office facilities; at the hearing before the Board, numerous protests were voiced by neighbors and the application was subsequently withdrawn. A second application which triggered the litigation now before us requested permission to exceed the side and rear yard requirements applicable in an "R-5" district. The Board again refused Dr. Cohen's application for variance.
The substance of Dr. Cohen's request for the additional space is that he could provide improved and expanded medical treatment to his patients in the neighborhood. *53 After hearing at which Dr. Cohen was the only witness as to the alleged community benefit of the additions, the Board determined that the variance should not be granted.
In its adjudication of October 7, 1969 denying the variance, the Board concluded that the applicant, Dr. Cohen, had not shown the "unnecessary hardship" requisite to the granting of a variance and had failed to present evidence sufficient to meet the criteria set forth in Section 14-1802 of the Philadelphia Code. Specifically the Board found that:
"a. the conditions upon which the appeal for a variance is based are not unique to the property for which a variance is sought;
"b. the variance will substantially and permanently injure the appropriate use of adjacent conforming properties. . .;
"c. the special conditions and circumstances forming the basis for this variance were caused solely by the acts and actions of the applicant alone when he eliminated a garage from this property and converted that portion of it into his office and erected an illegal structure for the storage of toys, tools and other articles required by applicant in the quiet enjoyment of his home;
"d. the grant of a variance will substantially increase traffic congestion in the public streets as a result of a more intensive and larger medical practice [and] bring more patients and automobiles into it;
"e. the grant of a variance will increase danger from fire and otherwise endanger the public safety;
"f. the grant of a variance will impair an adequate supply of light and air to the adjacent property . . .;
"g. the grant of a variance will not be in harmony with the spirit and purpose of this Section of the Zoning Ordinance;
*54 "h. the grant of a variance will adversely affect in a substantial manner the Comprehensive Plan for the City approved by City Planning Commission."
For the foregoing reasons, the Zoning Board denied the variance, after which action a timely appeal was taken to the lower court. Without taking additional testimony or without citing the reasons for its decision, the lower court reversed the Board. In an opinion that draws no authority from the substantial volume of case law on the subject, the Board was ordered to grant the variance.
We must reverse this decision of the lower court and affirm the Zoning Board's denial of the variance. The scope of review by the lower court where no additional testimony is taken is limited. Our scope is coequal to that exercised by such lower court.
"When no additional testimony is taken by the lower Court the test before this Court is whether the Board of Adjustment abused its discretion or committed an error of law: [citing cases]." Cleaver v. Board of Adjustment, 414 Pa. 367, 380, 200 A. 2d 408, 416 (1964).
We cannot conclude as the lower court did that the Zoning Board of Adjustment either committed such an abuse of its discretion or a manifest error of law to warrant a reversal of their well-documented decision.
The lesson of a recent landmark decision in Pennsylvania zoning law bears repeating here as a reminder as to the function of a reviewing court. "[T]he Court acts as a judicial overseer, drawing the limits beyond which local regulation may not go, but loathing to interfere, within those limits, with the discretion of local governing bodies." National Land and Investment Company v. Easttown Township Board of Adjustment, 419 Pa. 504, 521, 215 A. 2d 597, 607 (1965). Every court reviewing a decision of a local zoning board should demonstrate modest reluctance in trying to measure *55 and assess the multitude of factors and considerations which combine to effect the final decision of such board. Where no additional testimony was received in judicial proceeding, both the lower court and this court must exercise self-restraint as to substituting our opinions far removed from the particular zoning hearing for the well-considered decision of the local officials.
We find neither abuse of discretion nor a mistaken view of the law as to the denial of a variance by the Philadelphia Zoning Board of Adjustment. Section 14-1802, "Criteria for Granting Variances", in the Philadelphia Code, sets forth with specificity the standards by which an application for a variance should be measured. We conclude that the Board has followed this legislative mandate and that its decision should stand.
The burden of proof as to what the applicant for a variance must show has been frequently discussed in our zoning decisions. One principle has been widely and repeatedly expressed. "It is well settled that a variance will not be granted on the grounds of economic hardship alone [citing cases]." Andress v. Zoning Board of Adjustment, 410 Pa. 77, 88, 188 A. 2d 709, 714 (1963). Dr. Cohen in his testimony asserted that he could expand his practice if allowed to enlarge his building. The Board correctly concluded that such economic hardship was not the sort of unique and peculiar hardship being visited on the applicant's land alone that would warrant the granting of the variance. "[Appellee]. . . has not presented evidence that the property cannot profitably be used within the present space requirements." O'Neill v. Zoning Board of Adjustment, 434 Pa. 331, 338, 254 A. 2d 12, 16 (1969).
The further thrust of Dr. Cohen's argument rests on the alleged "community benefit" arising from the granting of the variance. To our thinking, "community benefit" encompasses the basic considerations of public *56 health, welfare, safety and morals which are the very essence of the Board's determination. This essential function of making determinations as to prospective "community benefit" has been adequately discussed by the Board in this case. Its adjudication and the record of hearing testimony demonstrate consideration of traffic congestion, adequacy of light and area, fire protection, and the character of the surrounding neighborhood. Absent some positive showing that other evidence was not considered or that the evidence before us does not support the denial of a variance, we feel constrained to conclude that the Board acted properly. Dr. Cohen is burdened with no greater zoning restrictions than anyone else in his district and he has not shown any hardship peculiar to his property. His medical practice has quite simply "outgrown" his present quarters and a variance cannot be properly granted for mere personal or professional convenience. Some incidental benefit to the local community would no doubt result from expanded medical facilities but there was no testimony as to lack of adequate medical service as it now exists by any patient. A variance is an extraordinary exception and should be granted sparingly. O'Neill v. Zoning Board of Adjustment, supra.
We therefore conclude that the lower court erred in reversing the Zoning Board of Adjustment and order that such decision be reversed.