## Manayunk Neighborhood Council Inc. v. Philadelphia Zoning Board of Adjustment

*Henry Louis Schirmer*, for appellant.

*Vernon T. Anastasio*, for appellee Federal National Mortgage.

CEISLER, *J.*, Sept. 19, 2014—The instant appeal arises from this court's July 2, 2014 order, denying a statutory appeal filed by appellants Manayunk Neighborhood Council, Inc. ("MNC") and John Hunter, MNC's Vice President, thereby affirming appellee Philadelphia Zoning Board of Adjustment's ("ZBA") decision to grant Intervening appellee Daniel Kane's request for a use variance to transform residential property from a three-family dwelling into a duplex.

## I. FACTS AND PROCEDURAL HISTORY

Intervening appellee Daniel Kane purchased a property located at 4221 Boone Street, Philadelphia, Pennsylvania ("Boone Street" or "Property").[1] Though the Property was zoned for use as a single-family residence, it had previously been illegally converted into a triplex by a prior owner. Certified record, 1/30/14, pt. 1 at 9-10; *see also* certified record, 1/30/14, pt. 2 at 4 (property sale agreement). Thereafter,[2] Vern Anastasio, Mr. Kane's lawyer, filed an

---

1. The certified record fails to establish exactly when this sale occurred, or from whom Mr. Kane purchased Boone Street; however, Federal National Mortgage averred that it conveyed the Property to Mr. Kane on April 26, 2013. Motion to amend at 2, Ex. C.

2. The certified record neither includes the application itself, nor

application with the City of Philadelphia's Department of Licenses and Inspections ("L&I"), in which he requested that L&I grant a variance and legalize Boone Street's current status as a three-family dwelling. Certified record, 1/30/14, Part 1 at 4, 58. L&I denied the application on January 11, 2013, noting that "[t]he proposed use [(]three family dwelling[)] is not permitted in this zoning district." *Id.* at 4-5, 58.

Mr. Anastasio appealed this decision to the ZBA on January 25, 2013, noting that "physically, [Boone Street] is outfitted as a three-family dwelling," that his client "was not responsible for said layout," and that they were merely seeking to legalize a "nonconforming, preexisting use." *Id.* at 59-60. On June 17, 2013, Mr. Anastasio submitted a letter to the ZBA which informed the ZBA that he had reached an agreement with Boone Street's neighbors wherein the neighbors had agreed to support the appeal, so long as Mr. Kane converted the property into a duplex rather than maintain it as a triplex; that Mr. Kane promised to have the Property managed by a local company, and that Mr. Kane agreed "to work to ensure [that] the [P]roperty is kept in a clean, safe and secure condition at all times." Certified record, 1/30/14. pt. 2 at 41-42; *see also id.* at 1 (petition signed by neighbors in support of Anastasio's modified appeal). Despite this support of the Boone St. neighbors, MNC, the area's registered community organization, remained opposed to the property being used as anything but a single-family home. *Id.* at 43-51.

On June 18, 2013, the ZBA convened a hearing regarding the Boone Street appeal. Mr. Anastasio presented the ZBA with interior and exterior photographs of the Property, as

---

any specific information establishing the date upon which this permit application was filed. *See* certified record, pt. 1 at 1.

well as a packet containing, among other things, a proposed duplex development plan for Boone Street, information regarding the area's housing stock, and his aforementioned June 17, 2013 letter to the board. Certified record. 1/30/14, Part 1 at 36, 55-66; certified record, 1/30/14. Part 2 at 1-31. Mr. Anastasio then reiterated that Mr. Kane was now seeking permission to turn Boone Street into a duplex, and answered preliminary questions posed by the ZBA panel. Certified record, 1/30/14, Part 1 at 36-37. This was followed by testimony from Mr. Kane, who discussed the physical nature of Boone Street and stated that it would be extremely difficult to turn the Property into a single family dwelling. As Mr. Kane explained, since Boone Street is

> currently laid out as a triplex, the home does not orient itself well being converted to a single family. A typical single-family home, row home in this case, stairwells and common hallways connect the rooms. The way the house is currently laid out, the stairway is interior to the home and the common hallways are along the exterior party walls, which essentially creates landlocked rooms in the event it were converted to a single family [home].

*Id.* at 38. In addition, Mr. Kane described his negotiations with the local community regarding Boone Street, and opined that the previous owner's apparent struggle to sell the property was directly related to its configuration as an unlawful triplex. *Id.* The board then heard from Daryl Davidson, who lives next door to Boone Street and spoke in support of Mr. Kane's duplex plan. *Id.* at 39-41. Further evidence was presented that 11% of the area properties were multifamily, and that the property had been vacant for three years. Certified record. 1/30/14, Part 2 at 7. Finally, Mr. Hunter testified that his organization was opposed to permitting Boone Street to remain a triplex,

as well as to allowing Mr. Kane to turn the property into a two-family dwelling. Certified record, 1/30/14, Part 1 at 42-45. The hearing concluded with the board voting 4-1 in favor of granting the requested variance, with the proviso that Boone Street be renovated and legalized as a duplex, rather than a three-family dwelling. *Id.* at 45; Certified record. 1/30/14. Part 2 at 57. The ZBA stamped Mr. Kane's Boone Street duplex plans on June 26, 2013, thereby signifying its approval, Certified record, 1/30/14, Part 1 at 29-33, and reaffirmed its June 18, 2013 decision on July 9, 2013 via an identical 4-1 vote. Certified record, 4/24/14. Part 1 at 1-2; Certified record, 4/24/14, Part 2 at 1-3.[3]

On July 18, 2013, appellants appealed the ZBA's ruling to the Philadelphia Court of Common Pleas. Federal National Mortgage ("FNM") then intervened in the appeal via praecipe on August 23, 2013. The ZBA filed a motion for extraordinary relief on December 2, 2013, which this court granted on December 16, 2013, thereby setting the filing deadline for as February 14, 2014 for appellants' brief, March 14, 2014 for the appellees' respective briefs, and the hearing date as March 26, 2014. Ceisler order, 12/16/13 at 1. Subsequently, FNM filed a motion to dismiss on February 28, 2014, in which it asked this court to quash the appeal due to appellants' failure to file their brief by this deadline, or otherwise articulate the basis for their appeal. Motion to dismiss at 3-6.

---

3. This second vote created some confusion, as MNC argued at one point in its filings with this court that the July 9, 2013 vote had approved a plan that was different than that approved at the June 18, 2013 hearing. *See* MNC's joinder to motion for extraordinary relief at 1; however, this line of attack was abandoned once it became dear that the July 9, 2013 vote was for procedural and housekeeping purposes, and was not a new, substantive ruling. *See* certified record. 4/24/14. Fart 1 at 1-2.

On March 10, 2014, FNM filed a motion for extraordinary relief, through which it asked for additional time to file its own brief, and that the appeal hearing be rescheduled, so as to allow this court enough time to rule upon FNM's motion to dismiss. FNM's motion for extraordinary relief at 2.[4] This court granted FNM's motion for extraordinary relief on March 17, 2014, setting the new due date its brief as April 21, 2014, and pushing the hearing date back to May 7, 2014. Ceisler order. 3/17/14 at 1.

Appellants responded to FNM's motion to dismiss on March 25, 2014, maintaining that the ZBA had "not mailed out notice of [its] July 9, 2013 decision and vote, therefore the appeal period has not yet begun to run... [as] [w]ithout a full decision from the... Board, which at a minimum must reveal the vote, there is no valid decision." Appellants' brief in opposition to the motion to quash at 3. Appellants supplemented this response the following day by filing a "new matter to the motion to quash," in which they argued that FNM did not have standing to contest their appeal. Appellants' new matter to the motion to quash at 1. FNM then filed a motion to amend caption on April 1, 2014, in which it averred that, as Mr. Kane owned Boone Street, he should be substituted in FNM's place as the intervening appellee. Motion to amend caption at 2.[5] On April 4, 2014, this court docketed an order denying FNM's motion to dismiss, further stating that the ZBA was required to "file with the court a supplemental certified

---

4. Appellants belatedly joined in this Motion on March 20, 2014, arguing that the ZBA had made a new ruling regarding Boone Street "on or around June 26, 2013 and July 9, 2013," but had neither publically announced the decision, nor "provide[d] a coherent record." MNC's joinder to motion for extraordinary relief at 1. Accordingly, appellants requested that the matter be remanded to the board. *Id.*

5. Appellants filed a response in opposition on April 22, 2014, while FNM filed a reply in support of its motion to amend caption on May 9, 2014.

copy of the record with regards to any proceeding(s) that occurred on July 9, 2013 and/or file with the court a sworn affidavit explaining any discrepancies with regards to any proceeding(s) that occurred on July 9, 2013," and to do so "on or before April 25, 2014." Ceisler order, 4/3/14 at 1. In addition, this court gave the appellants until May 9, 2014, and appellees until May 30, 2014, to file their respective briefs, and rescheduled the appeal hearing for July 2, 2014. *Id.* On April 24, 2014, the ZBA complied with this court's April 3, 2014 order by supplementing the certified record. Therein, the board explained that the July 9, 2014 vote had been conducted for exclusively housekeeping purposes, in order to make clear that the ZBA had approved the Boone Street plans which had been stamped on June 26, 2014, ones which were identical to those approved by the board through its June 18, 2013 hearing. Certified record, 4/24/14, part 1 at 1-2. Subsequently, this court granted FNM's motion to amend caption on May 29, 2014, thus adding Mr. Kane as an intervening appellee; however, this court declined to allow FNM to remove itself from the appeal. Ceisler order, 5/29/14 at 1.

Despite the clear language of this court's April 3, 2014 order, appellants failed to comply with its terms, instead waiting to file their brief until the *night before* the scheduled oral argument. *See* N.T. 7/2/14 at 3-4.[6] At the July 2, 2014 hearing, appellants attempted to explain this failure, stating, in essence, that they had been confused about whether FNM or Mr. Kane was the correct intervening appellee, and that it was not until this

6. THE COURT: "So Mr. Schirmer, first of all, I just want — this case when I was preparing there was no brief." MR. SCHIRMER: "Yes, Your Honor. The brief went in yesterday." THE COURT: "I'm in court. I was in court all day. So I haven't read your brief and it's late. So, theoretically, you waived all your issues on appeal."

court had ruled on FNM's motion to amend caption that they had been able to properly prepare their brief. *Id.* at 4-5. This court responded that appellants had been given ample time to prepare and submit a brief, and that, in any event, this excuse was not valid or reasonable, given that the only issue before this court was whether the ZBA had properly granted the aforementioned use variance. *Id.* at 5.[7] Finding the remainder of appellants' arguments on appeal to be incoherent and unpersuasive,[8] this court denied their

---

7. THE COURT: "What does this have anything to do with whether or not an unnecessary hardship was presented at the zoning board, that's the issue here, to try to get variance for a three-unit dwelling. It was amended voluntarily or by proviso. It had a two unit one. I remember the entire record. I read the notes of testimony. There was evidence of what would happen to try to make it into a single-family home. That's the only real issue. Did the zoning board commit an error of law, was their determination to grant a variance supported by substantial evidence or was this some type of constitutional violation."

8. It must be noted that appellants' brief is severely defective, in that it contains numerous arguments, statements of fact, and exhibits that appellants did not raise before, or submit to, the ZBA. *See, e.g.* Appellants' brief at 3 (alleged picture of interior of 4219 Boone Street, which MNC alleges has the same layout as the property); *id.* at 4-5, 9-10 (discussing Boone Street's age, construction, and alleged use over the years); *id.* at 7-8 (providing an alternate explanation for the previous owner's inability to quickly sell Boone Street, and accusing Mr. Kane of making false statements before the ZBA). Appellants attempt to get around the strictures of the Local Agency Law, *see* § II, *infra*, by arguing in the brief that this court should take "judicial notice" of this wealth of additional information; however such an argument utterly misapprehends the nature, and proper use, of this doctrine. *See HYK Const. Co. v. Smithfield Twp.*, 8 A.3d 1009, 1017 (Pa. Cmwlth. Ct. 2010) ("Although a court may take judicial notice of a fact, a 'judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' Pa. R.E. 201(b). Disputed questions of fact are not within the domain of judicial notice. *Haber v. Monroe County Vocational-Technical School*, 442 A.2d 292 (Pa. Super. Ct. 1982); [*Chaplin v. Pelton*. 423 A.2d 8 (Pa. Super. Ct. 1980)]. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice. Pa. R.E. 201(e); *see Commonwealth v. Covert*, 469 A.2d 248, 251 (Pa. Super. Ct. 1983) ("judicial notice should not serve to deny the opposing party the chance to disprove the fact sought to be judicially noticed"). Judicial notice itself does not necessarily establish

appeal at the end of the hearing, thereby affirming the ZBA's decision to grant the Boone Street duplex variance.

MNC appealed this court's decision to the Commonwealth Court on August 4, 2014.[9] On August 5, 2014, this court issued an order directing MNC to provide a statement of errors ("statement") pursuant to Pa. R.A.P. 1925(b); appellant's response was received by this court on August 26, 2014 and is attached to this opinion as Appendix A.

## II. STANDARD OF REVIEW

Since the instant appeal involves an appeal from a local agency, the ZBA, this appeal is governed by the Local Agency Law, which reads in pertinent part, "[i]n the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency." 2 Pa. C.S. $754(b). "A 'full and complete record' is defined as 'a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented.'" *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. Ct. 2006) (quoting *City of Philadelphia v. Bd. of License and Inspection Review*, 590 A.2d 79, 86 (Pa. Cmwlth. Ct. 1991)). Where such a record exists, "appellate review of [final agency adjudication] is limited

---

a fact. *In Interest of D.S.*, 622 A.2d 954 (Pa. Super. Ct. 1993). Judicial notice of a fact, when correctly taken, constitutes evidence, which like any evidence, may be rebutted. *Id.*").

9. While the order denying the petition was dated July 2, 2014, and docketed that same day, notice was not provided to the parties until July 3, 2014. Thus, the 30-day appeal period began running on July 3, 2014, and as August 2 and 3 were weekend days, the final day to submit a timely appeal was August 4, 2014. *See* Pa. R.A.P. 108(b); *Frazter v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999).

to determining whether constitutional rights have been violated, an error of law has been committed or findings of fact necessary to support the adjudication are not supported by substantial evidence." *Lewis v. Civil Serv. Comm'n*, 542 A.2d 519, 522 (Pa. 1988); *Kosanovich v. Retirement Bd. of Allegheny Cnty.*, 724 A.2d 420 n. 1 (Pa. Cmwlth. Ct. 1999) (same); *see also Banks v. Civil Serv. Comm'n*, 708 A.2d 890, 891 n. 1 (Pa. Cmwlth. Ct. 1998) (citing *Republic Steel Corp. v. Workmen's Comp. Appeal Bd.*, 421 A.2d 1060 (Pa. 1980)) ("[I]n order to reverse the decision of an administrative agency, [an appellate court] must conclude that the findings of the agency are totally without support in the record.").

A court reviewing a decision of an administrative agency should be reluctant to measure and assess the multitude of factors and considerations that support an administrative agency's decision. *See Cohen v. Zoning Bd. of Adjustment*, 276 A.2d 352, 355 (Pa. Cmwlth. Ct. 1971). Stated differently, where the reviewing court takes no additional testimony, the court should exercise self-restraint and avoid substituting its own opinions for the decision of local officials. *Id.* "It is, after all, the sole function of the board, in the performance of its role as fact finder, to evaluate witness credibility and assign evidentiary weight." *Lower Allen Citizens Action Grp., Inc. v. Lower Allen Twp. Zoning Hearing Bd.*, 500 A.2d 1253, 1258 (Pa. Cmwlth. Ct 1985). The ZBA "as fact finder is the ultimate judge of credibility and resolves all conflicts in the evidence," *Eichlin v. New Home Boro. Zoning Board*, 679 A.2d 1173, 1175 (Pa. Cmwlth. Ct. 1996), having "the power to reject even un-contradicted testimony if it finds it lacking in credibility." *Lower Allen*, 500 A.2d at 1258.

This court determined that the certified record, as provided to it by the board, was full and complete, and thus that the appropriate standard of review for the matter before it was of the limited nature articulated in 2 Pa. C.S. §754(b).

## III. DISCUSSION

This court respectfully requests that the instant appeal be denied for the following reasons:

1. The ZBA's finding of unnecessary hardship was supported by substantial evidence, and was not purely economic in nature;

2. Mr. Kane did not create this unnecessary hardship;

3. The ZBA granted the minimum variance necessary to afford proper relief.

Pursuant to Philadelphia Zoning Code ("Code"), the board may grant an applicant's request for a variance only where "denial of the variance would result in an unnecessary hardship." Phila. Code § 14-303(8)(e)(.1) (.a). The code provides specific variance criteria that the applicant must satisfy, *see Id.* at §§ 14-303(8)(e),[10] which

---

10. (e) Criteria for approval.
The Zoning Board shall grant a variance only if it determines that the applicant has demonstrated that the criteria of this § 14-303(8)(e) (Criteria for approval) have been met and that any applicable criteria in §§ 14-303(8)(f) (Additional criteria for floodplain variances) through 14-303(8)(h) (Additional criteria for height variances near the airport) have been met. Otherwise, the Zoning Board shall deny the variance.
(.1) General criteria.
The Zoning Board may grant a lesser variance than requested, and may attach such reasonable conditions and safeguards as it may deem necessary to implement this Zoning Code, including without limitation a limitation on the size or duration of the variance, consistent with § 14-303(9) (Conditions on approvals). The Zoning Board shall, in writing, set forth each required finding for each variance that is granted, set forth each finding that is not satisfied for each variance

that is denied, and to the extent that a specific finding is not relevant to the decision, shall so state. Each finding shall be supported by substantial evidence. If the Zoning Board chooses to view the subject property as part of the hearing, the Zoning Board must provide due process. Reports of other city agencies made as a result of inquiry by the Zoning Board shall not be considered hearsay. Upon request of any party, the Zoning Board may compel the attendance of the city agency. The Zoning Board shall grant a variance only if it finds each of the following criteria are satisfied:

(.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in § 14-303(8)(e)(.2) (Use variances) below, in the case of use variances, or the criteria set forth in § 34-303(8)(e)(.3) (Dimensional variances) below, in the case of dimensional variances, have been satisfied;

(.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

(.2) Use Variances.

To find an unnecessary hardship in the case of a use variance, the Zoning Board must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there

the Pennsylvania Supreme Court has "boiled down into three key requirements, that of: 1) unique hardship to the property; 2) no adverse effect on the public health, safety or general welfare; and 3) the variance will represent the minimum variance that will afford relief at the least modification possible." *E. Torresdale Civic Ass'n v. Zoning Bd. of Adjustment of Philadelphia Cnty.*, 639 A.2d 446, 447 (Pa. 1994).[11] The applicant bears the burden of proof, *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983), and must establish that they did not create the unnecessary hardship themselves. Phila. Code § 14-303(8)(e)(.1)(.a).

Despite these constraints, however, "an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Marshall v.*

---

is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

(.3) Dimensional variances.

To find an unnecessary hardship in the case of a dimensional variance, the Zoning Board may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

11. The code iteration addressed in *East Torresdale* was repealed and replaced by a new version that went into effect on August 22, 2012; however, it is this court's belief that the thrust of the new code, as it pertains to variances, is substantially similar to that of the old code, and that, as such, the Pennsylvania Supreme Court's distillation of the applicable criteria is still accurate.

*City of Philadelphia*, 37 EAP 2013, 2014 WL 3579694 (Pa. July 21, 2014) (emphasis in original). Moreover, though "[m]ere economic hardship will not of itself justify a grant of a variance," *City of Pittsburgh v. Zoning Bd. of Adjustment*, 559 A.2d 896, 903 (Pa. 1989), "[t]he board's discretion is not so circumscribed as to require a property owner to reconstruct a building to a conforming use[,] regardless of the financial burden that would be incident thereto. Especially is this true where the change sought is from one nonconforming use to another more desirable nonconforming use that will not adversely affect but better the neighborhood." *O'Neill v. Philadelphia Zoning Bd. of Adjustment*, 120 A.2d 901, 904-05 (Pa. 1956).

In the instant matter, MNC challenges this court's denial of its appeal, and affirmation of the ZBA's decision, on three bases: "1. Any hardship [suffered by Mr. Kane] is purely economic... restoration to a single family dwelling [is] not impossible, but merely costly. 2. Any hardship is self inflicted [by Mr. Kane]... who knowingly sought to continue the illegal multifamily use [of Boone Street]. 3. "The relief granted [by the board] is not the minimum relief required. The prior use of a single family dwelling is the minimum reasonable use of the property. When choosing between use for 3 units, 2 units or 1 unit, 2 is not the minimum, 1 is the minimum." Statement of errors at 2. This court will deal with each of these issues *seriatim*.

First, the certified record contains substantial evidence establishing that the Boone Street Property's "unnecessary hardship" was not purely economic in nature. Indeed, this is not a situation where Mr. Kane sought a variance solely for the purpose of maximizing the return on his investment. *See, e.g. Valley View*, 462 A.2d at 640 ("[M]ere evidence that the zoned use is less financially

rewarding than the proposed use is insufficient to justify a variance."); *O'Neill*, 120 A.2d at 904 ("[T]he mere fact that the property would increase in value if a variance were granted, is not of itself a sufficient basis for a claim of unnecessary hardship."); rather, as Mr. Kane argued to the ZBA, Boone Street's layout is such that turning it into a single-family home would create interior access issues, whereby certain rooms would be "landlocked," meaning that a variance was required for the property to be used in a feasible manner. Certified record, 1/30/14, Part 1 at 38. The board found Mr. Kane's testimony to be credible, declaring that he had "demonstrated that it would be impracticable to revert the... Property back to a single-family dwelling due to the fact that it is configured as a three-family dwelling," and that "the literal enforcement of the... Code against the... Property would result in an unnecessary hardship due to [its] physical surroundings and particular size and configuration." *Id.* at 10; *cf. In re Petition of Dolington Land Grp.*, 839 A.2d 1021, 1026 (Pa. 2003) (citation omitted) ("The... Board as fact-finder is the sole judge of credibility with power to resolve conflicts in the testimony and to reject even uncontradicted testimony that it finds to be lacking in credibility."). Accordingly, MNC's first allegation of error is without merit, as there is substantial evidence within the certified record supporting the ZBA's finding of unnecessary hardship.

Second, it is indisputable that one of Boone Street's previous owners transformed the property in to an illegal triplex, and that Mr. Kane played no part in creating this unnecessary hardship. At the June 18, 2013 ZBA hearing, both Mr. Kane and Mr. Hunter testified that Boone Street was configured as a three-family home well before Mr. Kane's purchase, a description which was bolstered by PECO records establishing that it maintained three

separate private electrical meters at the property. Certified record, 1/30/14, Part 1 at 38, 43-44, 66. Thus, MNC's second allegation of error is also baseless.

Finally, MNC's third allegation of error is equally inaccurate. Bafflingly, MNC argues that the minimum variance necessitated by this situation is one which permits Mr. Kane to establish Boone Street as a single-family home. To state the obvious, since Boone Street was *already* zoned for use as a single-family home, such duplicative permission would neither accord relief from unnecessary hardship, nor constitute a variance. As already noted, the board found that it would cause Mr. Kane unnecessary hardship to force him to reconstitute Boone Street as a single-family home, due to the property's interior layout; accordingly, the board chose to permit Mr. Kane to turn Boone Street into a duplex. Given the circumstances, allowing Boone Street to be used for two units of housing (rather than the code-permitted one) constituted the minimum variance necessary to afford relief to Mr. Kane, As such, MNC's third allegation of error is unfounded.

## IV. CONCLUSION

For the aforementioned reasons, this court respectfully requests that the instant appeal be denied.

## APPENDIX A

## APPELLANT'S 1925 B STATEMENT OF ISSUES UPON APPEAL

## I BRIEF PROCEDURAL HISTORY

This is appellant's 1925(b) Statement of Matters on Appeal. On or about September 10, 2012 the Philadelphia Dept. of License and Inspections [L&I] issued a violation notice for an illegal triplex conversion at 4221 Boone

Street. At some point in time someone filed something claiming 4221 Boone was a legal non-conforming triplex. On January 11, 2013 L&I denied the request. On January 25, 2013 the denial was appealed to the Zoning Board.

On June 18, 2013 the Philadelphia Zoning Board of Adjustment held a hearing. At the hearing the owner abandoned the claim that 4221 Boone was a legal, non-conforming triplex. The owner claimed that the layout as an illegal triplex imposed an unnecessary hardship on the property which justified a duplex use. The Zoning Board issued the requested variance for a duplex. On July 18, 2013 this decision was appealed to the Philadelphia Common Pleas Court.

On July 3, 2014 the Philadelphia Common Pleas Court entered an order affirming the decision of the Zoning Board on the merits, indicating that the Zoning Board decision was supported by substantial evidence.

## II ISSUES UPON APPEAL

The Honorable Court erred in affirming the Zoning Board for the following reasons:

1) Any hardship is purely economic. The Zoning Board received testimony that the prior owner's conversion of the single family dwelling into an illegal triplex resulted in a physical hardship to the property. However, any hardship is merely economic; the current owner indicated that restoration to a single family dwelling was not impossible, but merely costly.

2) Any hardship is self inflicted. The Zoning Board received testimony that the prior owner's conversion of the single family dwelling into an illegal triplex resulted in a hardship to the property. However any

hardship arising from the illegal multi-family use is self inflicted. The hardship is self inflicted because it arises from the intentional acts of an owner who knowingly created the illegal multi-family use. The intentional act of purchasing an illegal multi-family dwelling is also a self inflicted hardship. Any hardship is self inflicted because it arises from the intentional acts of an owner who knowingly sought to continue the illegal multi-family use.

3) The relief granted is not the minimum relief required. The prior use of a single family dwelling is the minimum reasonable use of the property. When choosing between use for 3 units, 2 units or 1 unit, 2 is not the minimum, 1 is the minimum.